## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

BRIAN EDWARD GLICK,

      Plaintiff,

v.

                                 Case No.  5:20-cv-164-TKW-MJF

CENTURION OF FLORIDA, *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, has filed a fourth amended complaint alleging violations of the Eighth Amendment and the Americans with Disabilities Act ("ADA"). (Doc. 23). The undersigned recommends that Plaintiff's complaint be dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief can be granted.[1]

## I. PLAINTIFF'S FOURTH AMENDED COMPLAINT

Plaintiff Brian Edward Glick is an inmate of the Florida Department of Corrections ("FDC") confined at Santa Rosa Correctional Institution Annex. (Doc. 23 at 2). Plaintiff's fourth amended complaint names three Defendants: P. Miller, an

_____

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

Advanced Registered Nurse Practitioner at Gulf Correctional Institution; Michelle Schouest, an Intensive Instructional Service Consultant at the FDC's Central Office; and Centurion of Florida, a private entity that contracts with the State of Florida to provide medical services to inmates. (*Id.* at 2-3). Plaintiff claims the Defendants violated his Eighth-Amendment rights by "revoking" his medical passes for a walking cane, insoles, bottom bunk, and no prolonged standing upon his transfer from one FDC institution to another. (*Id.* at 14). Plaintiff also asserts an ADA claim against Centurion based upon the same facts. (*Id.*). In support of these claims, Plaintiff alleges the following.

When Plaintiff entered the FDC in March 2006, he had a bullet lodged behind his right ankle. (Doc. 23 at 6, ℙ 2). Plaintiff alleges that in May 2019, while he was housed at Mayo C.I., he began experiencing increased pain in his right ankle and heel when he placed weight on it. (*Id.* at 7, ℙℙ 7-9). Plaintiff filed a sick-call request complaining of pain and disturbance in his gait. (*Id.*, ℙ 10). Plaintiff was seen by a nurse, who set up an appointment with a doctor. (*Id.*). Three days later, Plaintiff was seen by a doctor, who ordered x-rays of Plaintiff's right foot. (*Id.* at 8, ℙ 11). Plaintiff was seen again by Mayo C.I. medical staff in July 2019. (*Id.*, ℙ 13). Plaintiff alleges that medical staff advised him that the pain was probably caused by the bullet's close proximity to a nerve. (*Id.*). Medical staff issued Plaintiff passes for a walking cane,

insoles, and no prolonged standing to manage his pain and improve his gait disturbance. (*Id.*).

Plaintiff was transferred from Mayo C.I. to Gulf C.I. in October 2019. (Doc. 23 at 9-10, ⁋ 16). Within a week of transfer, Defendant Miller "revoked" Plaintiff's medical passes after reviewing his medical file and determining (which she noted on his inmate intake form): "Passes are not medically necessary (was given based on subjective complaints)." (*Id.*, ⁋⁋ 16-18). Plaintiff complains that Miller "revoked" the passes "without any examination or appointment." (*Id.*). Plaintiff concludes that Miller revoked the passes pursuant to Centurion's "longstanding policy, practice, and custom" of revoking all medical passes issued by medical providers at an inmate's sending institution upon an inmate's arrival at "penal camps for problem inmates," such as Gulf C.I. (*Id.* at 10-11, ⁋⁋ 17, 19).

Plaintiff states that he later was moved to a top bunk. (Doc. 23 at 11, ⁋ 20). He alleges that having to climb up and down from the top bunk, stand for long periods, and walk across the compound without a walking cane aggravated his pain and gait disturbance. (*Id.*). Plaintiff filed a grievance (not a sick-call request) to the Gulf C.I. medical department complaining about the revocation of the medical passes issued at Mayo C.I. (*Id.* at 11-12, ⁋ 21). A nurse, who is not a named Defendant, responded to Plaintiff's grievance by stating that the medical passes were not medically indicated because Plaintiff's x-ray report did not indicate bone or joint

damage. (*Id.*). Plaintiff appealed the denial of his grievance to the Office of the Secretary, describing his medical history. (*Id.* at 12, ⁋ 22). Defendant Schouest denied Plaintiff's grievance appeal on December 13, 2019, noting that the institutional response "appropriately addresses the issue." (*Id.*). Plaintiff alleges that the pain in his right ankle increased, and that after several weeks security staff moved him to a bottom bunk. (*Id.* at 12-13, ⁋ 23).

In February 2020, Plaintiff was transferred to Santa Rosa C.I., where he remains confined. (Doc. 23 at 13, ⁋ 24). A clinician at Santa Rosa C.I. issued Plaintiff a medical pass for no prolonged standing. (*Id.*). Plaintiff alleges that the clinician informed him that, pursuant to Centurion policy, a walking cane and insoles are issued only to treat a "physical deformity," not nerve pain. (*Id.*, ⁋ 25).

As previously noted, Plaintiff claims that the Defendants were deliberately indifferent to his need for medical passes for a walking cane, insoles, bottom bunk, and no prolonged standing, in violation of his Eighth-Amendment rights. (*Id.* at 14). Plaintiff also asserts an ADA claim against Centurion. (*Id.*).

Plaintiff seeks nominal damages of $100.00 from each Defendant, compensatory damages of $1,000,000.00 from each Defendant, and punitive damages of $1,000,000.00 from each Defendant. (Doc. 23 at 15). He also requests an injunction requiring Centurion to "provide either surgery or treatment, and to acknowledge [his] disability." (*Id.*).

## II. SCREENING STANDARD UNDER 28 U.S.C. §§ 1915A AND 1915(e)(2)

Because Plaintiff is a prisoner and is proceeding *in forma pauperis*, the court is required to review his complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings). Determining whether a complaint states a claim upon which relief can be granted is governed by the standard set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(6); *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).

There are a few exceptions to this rule, such as when the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice. 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2008). Further, only *well pleaded* factual allegations are taken as true and only *reasonable* inferences are drawn in favor of the plaintiff. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *Marrero v.*

*City of Hialeah*, 625 F.2d 499, 502 (5th Cir. 1980); *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). Mere "labels and conclusions" are not accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation")); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266 (11th Cir. 2009) ("[I]n testing the sufficiency of the plaintiff's allegations, we do not credit . . . conclusory allegations as true.").

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The mere possibility that the defendant acted unlawfully is insufficient. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Id.* at 570; *see also Iqbal*, 556 U.S. at 678 (reiterating that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed

factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A complaint also may be dismissed for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *see also Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *Jones v. Bock*, 549 U.S. 199, 215 (2007) (reiterating that principle).

### III. DISCUSSION

**A.** **Plaintiff's Complaint Fails to State a Plausible Eighth-Amendment Claim Against Defendant Schouest, Centurion, or Miller**

#### 1. *Eighth-Amendment Standard*

The Eighth Amendment of the United States Constitution prohibits the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend VIII. Under the Eighth Amendment, the "[f]ederal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). As particularly relevant here, the Supreme Court has held that prison officials violate the prohibition on cruel and unusual punishments when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A deliberate-indifference claim has both an objective and a subjective component. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). First, the

prisoner must prove that he had "an objectively serious medical need." *Id*. "[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation omitted), *overruled in part on other grounds in Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002); *see also Andujar v. Rodriguez*, 486 F.3d 1199, 1203 (11th Cir. 2007) (same). "[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citation omitted).

Second, the prisoner must prove that prison officials acted with "deliberate indifference" to that need. *Brown*, 387 F.3d at 1351. This requires the prisoner to show that the officials (1) had "subjective knowledge of a risk of serious harm" and (2) "disregard[ed]" that risk (3) by conduct that was "more than mere negligence." *Id.* The defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant also must draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The deliberate-indifference standard is akin to "subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 839-40; *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 n.2 (11th Cir. 2020). A defendant's "failure to alleviate a significant risk that he should

have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

"A prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). The Eleventh Circuit has held, for instance, that the Constitution does not require that the medical care provided to prisoners be "perfect, the best obtainable, or even very good." *Harris*, 941 F.2d at 1510 (quotation omitted). Rather, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 1505 (quotation omitted).

Furthermore, the Eleventh Circuit has stated that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." *Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability

under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

### 2.   *Plaintiff's Complaint Fails To State A Plausible Eighth-Amendment Claim Against Defendant Schouest*

Plaintiff's Eighth-Amendment claim against Defendant Schouest is based solely on her denial of Plaintiff's administrative grievance appealing the institutional medical staff's denial of his request for the medical passes.

"It is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citation omitted). A supervisor may be liable under § 1983 only if she "personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional violation." *Id.* (citing *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)).

The mere fact that Defendant Schouest denied Plaintiff's grievance appeal does not state a plausible basis for holding her liable for the decisions of Plaintiff's medical providers at his institution. *See Keating*, 598 F.3d at 762; *see also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983

on supervisory official who denied administrative grievance and otherwise failed to act based on information contained in the grievance); *see also, e.g., Coleman v. Bowden*, 797 F. App'x 422, 427 (11th Cir. 2019) (dismissing prisoner's claim against prison official whose only alleged involvement was reviewing plaintiff's "emergency" grievance as the FDC Secretary's representative, and returning the grievance without action) (citing *Gallagher*, *supra*); *Hoever v. Belleis*, 703 F. App'x 908, 912 (11th Cir. 2017) (dismissing prisoner's claim against supervisors of offending officers; prisoner's allegation that the supervisors denied grievances against their subordinates "was insufficient to establish that the supervisors instigated or encouraged unlawful conduct.").

Further, Defendant Schouest's act of deferring to the opinion of Plaintiff's medical providers at his current institution (then Gulf C.I.) does not plausibly suggest that Schouest inferred that a substantial risk of serious harm would befall Plaintiff if she did not approve his grievance and/or direct his medical providers to issue passes for a walking cane, insoles, low bunk, and no prolonged standing. *See, e.g., Howell v. Evans*, 922 F.2d 712, 723 ("We do not dispute [the] right to rely on medical professionals for clinical determinations."), *vacated by settlement*, 931 F.2d 711 (11th Cir. 1991), *reinstated by order*, 12 F.3d 190 n.* (11th Cir. 1994); *see also Dolihite v. Maughon*, 74 F.3d 1027, 1054-55 (11th Cir. 1996) (awarding director of adolescent center summary judgment on section 1983 due process complaint when

director could "reasonably rely on" judgment of medical personnel to secure suicidal youth's surroundings); *Acosta v. Watts*, 281 F. App'x 906, 908 (11th Cir. 2008) (holding that administrative official who denied prisoner's administrative appeal and request for surgery based on clinical determination by medical providers that surgery was not required "cannot be held liable for a constitutional tort when his administrative decision was grounded in a decision made by medical personnel.").

This court previously notified Plaintiff of the Eighth-Amendment standard and that his factual allegations failed to state a plausible claim for relief against Defendant Schouest. (*See* Doc. 22). Plaintiff still has not come forward with facts that state a plausible claim for relief against this Defendant. For these reasons, Plaintiff's Eighth-Amendment claim against Defendant Schouest should be dismissed under § 1915(e)(2)(B)(ii) and § 1915A(b)(1), for failure to state a claim. *See, e.g., Thompson v. Kelly*, 710 F. App'x 430, 431 (11th Cir. 2018) (dismissing complaint where plaintiff received opportunity to amend her complaint—as well as instruction from the district court as to prior complaints' legal deficiencies—yet still failed to plead facts plausibly elevating her claims above the speculative level (citing *Twombly*, 550 U.S. at 555-56)).

**3.    *Plaintiff's Complaint Fails to State A Plausible Eighth-Amendment Claim Against Centurion***

As the court previously advised Plaintiff (*see* Doc. 22), an employing entity like Centurion cannot be held liable under § 1983 for an employee's actions based

on vicarious liability or *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that an employing entity—there a city—"may not be sued under § 1983 for an injury inflicted solely by its employee or agents."); *Cottone*, 326 F.3d at 1360. Instead, to impose liability on Centurion under § 1983, Plaintiff must show that (1) his Eighth-Amendment right was violated; (2) Centurion had a custom or policy that constituted deliberate indifference to that right; and (3) the custom or policy caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *Monell*, 436 U.S. at 694 (holding that an employing entity is liable under § 1983 for an employee's constitutional violation only if the violation was based on the entity's policy or custom, or if the employee was one whose edicts or acts fairly could be said to represent official policy); *Buckner v. Toro*, 116 F.3d 450, 452-53 (11th Cir. 1997) (explaining that the *Monell* policy-or-custom requirement applies to entities performing traditional state functions); *see also, e.g.*, *Brennan v. Headley*, 807 F. App'x 927, 937 (11th Cir. 2020) ("Corizon, as a private entity that contracts with the state to provide medical services to inmates, is treated as a municipality for purposes of § 1983 claims."); *Smith v. Salter*, 794 F. App'x 817, 821 (11th Cir. 2019) ("To prevail on a § 1983 claim against a company that has contracted to provide medical care to prisoners, [the prisoner/plaintiff] must establish that his injury was the result of a policy or custom.").

Plaintiff must "identify a [Centurion] policy or custom that caused his injury." *McDowell*, 392 F.3d at 1290 (internal quotation marks and citations omitted). This "threshold identification of a custom or policy" ensures that Centurion is held liable only for those deprivations resulting from official policy, and it "prevents the imposition of liability based upon an isolated incident." *Id.* "A policy is a decision that is officially adopted by [Centurion], or created by an official of such rank that he or she could be said to be acting on behalf of [Centurion]." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (quotation marks and citation omitted); *see also id.* ("Only those officials who have final policymaking authority may render the municipality liable under § 1983."). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.*

Plaintiff maintains that two policies or customs caused his injury (i.e., pain and gait disturbance). Plaintiff alleges that Centurion has a policy of "revoking" all medical passes issued by medical providers at an inmate's prior institution when the inmate is received at "penal camps for problem inmates." (Doc. 23 at 10-11, ¶¶ 17, 19). Plaintiff admits, however, that a medical provider at the receiving institution reviews the inmate's medical file and examines—for medical necessity—the passes issued by medical providers at the sending institution. (*Id.* at 9-10, ¶ 16). Plaintiff also admits that medical providers at the receiving institution issue passes that they deem medically necessary. (*Id.* at 13, ¶ 24). This policy of requiring a determination

of medical necessity by medical providers at the inmate's new institution does not constitute deliberate indifference.

Plaintiff also alleges that Centurion has a policy of "not allow[ing] any passes for a cane, insoles, or anything else beyond a no-prolonged-standing . . . unless the inmate had a 'physical deformity,' regardless of nerve pain." (Doc. 23 at 13, ℗ 25). Plaintiff's allegation is refuted by the fact that he was provided a walking cane and insoles, as well as a pass for a low bunk, at Mayo C.I. which also is an FDC institution for which Centurion is contracted to provide medical services.[2] (*Id*. at 8, ¶ 13).

This court previously notified Plaintiff of the Eighth-Amendment standard and that his factual allegations failed to state a plausible claim for relief against Centurion. (*See* Doc. 22). Plaintiff still has not come forward with facts that state a plausible claim for relief against this Defendant. For these reasons, Plaintiff's Eighth-Amendment claim against Centurion should be dismissed under

---

[2] Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, the court takes judicial notice of the fact that Centurion has been the FDC's medical contractor since May 2016. *See McPherson v. Fla. Dep't of Corr.*, No. 4:19-cv-156-MW-MJF, 2020 WL 7017741, at *3 (N.D. Fla. July 27, 2020) (finding as fact that Centurion has been the FDC's medical contractor since May 2016). The court's taking judicial notice of this fact in a non-dispositive order provides Plaintiff an opportunity to be heard as required by Rule 201(e). *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651-53 (11th Cir. 2020).

§ 1915(e)(2)(B)(ii) and § 1915A(b)(1), for failure to state a claim upon which relief can be granted.

### 4.     *Plaintiff's Complaint Fails To State A Plausible Eighth-Amendment Claim Against Defendant Miller*

Plaintiff's claim against Defendant Miller is based on Miller's act of "revoking" Plaintiff's medical passes during the intake process at Gulf C.I. (Doc. 23 at 9-10, ¶ 16). Plaintiff alleges that Miller reviewed his medical file, including his prior passes, and revoked them on this basis: "Passes are not medically necessary (was given based on subjective complaints)." (*Id.*, ¶¶ 16-18). Plaintiff alleges that Miller made this determination "without any examination or appointment." (*Id.*).

The fact that Miller applied a more conservative standard—one that required medical necessity—than Plaintiff's medical providers at Mayo C.I. does not support a claim of deliberate indifference. *See Waldrop*, 871 F.2d at 1033; *see also, e.g., Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) ("The Eighth Amendment did not compel Dr. Fisher to check his own medical training and judgment at the door, simply because he was informed that some other doctor at some other time had prescribed orthopedic shoes for his patient.").

Further, Plaintiff's factual allegations do not plausibly suggest that Miller subjectively inferred that revoking Plaintiff's passes during the intake process placed Plaintiff at a substantial risk of serious harm. The sick-call process was available to Plaintiff to obtain medical services, including issuance of passes. Indeed, Plaintiff

acknowledges that his use of the sick-call process was the means by which he obtained the medical passes at Mayo C.I. (Doc. 23 at 7-8, ¶¶ 10, 13). For these reasons, Plaintiff's existing factual allegations fail to state a plausible deliberate indifference claim against Miller, and should be dismissed under § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

## B.   <u>Plaintiff's Complaint Fails To State A Plausible ADA Claim Against Centurion</u>

"In order to state a Title II claim, a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). "[T]he plain text of Title II of the ADA unambiguously extends to state prison inmates . . . ." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). That is, "a disabled prisoner can state a Title II-ADA claim if he is denied participation in an activity provided in state prison by reason of his disability." *Bircoll*, 480 F.3d at 1081. Although "the ADA . . . was never intended to apply to decisions involving . . . medical treatment," *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005), the Supreme Court has made clear that "medical services" fall within the ambit of Title II. *See Yeskey*, 524 U.S. at 210.

Plaintiff's complaint clearly fails to satisfy the second and third prongs of an ADA claim. Plaintiff cannot show that he was "excluded from participation in or denied the benefits of" Centurion's medical services—specifically, its provision of medical passes for walking canes, insoles, low bunk, and no prolonged standing— because of his disability. As previously noted, Plaintiff admits that he had access to medical services and that received the very medical services at issue here (particular medical passes) from Centurion while confined at Mayo C.I. The fact that his medical providers at Gulf C.I. did not deem the passes medically necessary does not state a plausible claim of disability discrimination against Centurion. *See Schiavo*, 403 F.3d at 1294 (dismissing ADA claim where allegations of complaint demonstrated that hospice did not remove nutrition and withhold medication from patient "on the basis of [her] disability," but rather on a different basis (a court order); noting also that the ADA is not a remedy for medical malpractice (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996))).

Because Plaintiff's ADA claim against Centurion is not plausible on its face, it should be dismissed under § 1915(e)(2)(B)(ii) and § 1915A(b)(1), for failure to state a claim. *See Bircoll*, 480 F.3d at 1083; *see also, e.g. Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F. App'x 475, 478-79 (11th Cir. 2015) (holding that prisoner's complaint failed to state a plausible ADA claim based on prison medical officials' denial of certain medical services; prisoner's allegations did not demonstrate that he

was excluded from or denied the benefits of the prison's services *because of his disability*, and documents attached to his complaint revealed that he had access to medical services and that he received medical services for the purpose of treating his disability); *Jones v. Rutherford*, 546 F. App'x 808, 811-12 (11th Cir. 2013) (dismissing ADA claim where plaintiff alleged merely that he was given insufficient medical care).

## IV. CONCLUSION

The facts as pleaded in Plaintiff's fourth amended complaint fail to state a plausible Eighth-Amendment claim or ADA claim against any of the Defendants. For this reason, the undersigned respectfully **RECOMMENDS** that:

1.     Plaintiff's fourth amended complaint be **DISMISSED** under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief can be granted.

2.     The clerk of court be directed to close this case file.

At Pensacola, Florida, this 14th day of October, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES
**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. Any different deadline that may appear on the**

**<u>electronic docket is for the court's internal use only and does not</u> <u>control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**